The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ford. The appealing parties have shown good grounds to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
***********
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as:
 FINDINGS OF FACT
1. On March 8, 1990, plaintiff suffered a compensable injury by accident arising out of and in the course of his employment with defendant-employer resulting in an injury to his back. At the time of plaintiff's injury by accident, his average weekly wage was $258.80. As a result of plaintiff's injury, he came under the care of Dr. Kenneth Rich on June 5, 1990 and on August 31, 1991 underwent a microdiskectomy at L4-5 and a foraminotomy at L5-S1. Plaintiff was discharged on November 26, 1991. After this surgery, plaintiff retained a 15% permanent partial impairment to the back. Thereafter, on May 28, 1993, plaintiff underwent a second surgery for a recurrent herniated disk at L4-5.
2. On November 11, 1993, plaintiff reached the end of his healing period and as a direct and proximate result of his March 8, 1990 compensable injury, retained a 25% permanent impairment to the back.
3. Pursuant to a Form 21 Agreement for Compensation for Disability approved by the Commission on April 3, 1990, and Forms 26 Supplemental Memorandum of Agreement as to Payment of Compensation, approved by the Commission on November 1, 1990, August 29, 1991 and January 7, 1992, plaintiff was paid temporary total disability compensation at the rate of $172.54 per week up to July 7, 1995 and was paid permanent partial impairment compensation (45 weeks) for his 15% permanent partial impairment rating received on November 26, 1991 after his first surgery.
4. Plaintiff was released by Dr. Rich, his treating his physician, to do sedentary work as long as there was no bending and twisting and as long as plaintiff could sit or stand and if sitting, could stand a couple of minutes within each half hour period.
5. On January 12, 1994, plaintiff was referred to Total Rehabilitation at which time he indicated an interest in becoming a tattoo artist. The vocational coordinator, Tonya Ballard, discussed the feasibility of this work option with the plaintiff and asked the plaintiff to gather information and develop a business plan to be presented to defendant-insurer. However, plaintiff did not present a business plan or any information at his next appointment of February 21, 1994. Vocational efforts continued and other return to work goals were discussed. Plaintiff's subsequent vocational testing indicated that he would be a probable success as a tattoo artist and plaintiff was again instructed to gather information regarding a tattoo shop and submit a business plan. Again plaintiff failed to do so. Plaintiff was scheduled to attend a job club in Fayetteville, North Carolina on March 2, 1994, but did not attend due to an alleged lack of transportation. Plaintiff attended the job club on March 9, 1994, but complained heavily, wanted to leave early and was uncooperative. He failed to attend the next two scheduled appointments for March 16, 1994 and March 23, 1994 and did not call.
6. Thereafter, Total Rehabilitation scheduled a meeting and provided transportation for plaintiff to Harnett Production Enterprises. Again plaintiff was requested twice to return a plan for self-employment as a tattoo artist. Plaintiff met with his new vocational coordinator Linda DeBaer of Total Rehabilitation, on July 12, 1994. Ms. DeBaer met with plaintiff at Harnett Production Enterprises for a tour and discussion of services, plaintiff expressed concerns about transportation but Harnett Production Enterprises offered to provide transportation.
7. Plaintiff was scheduled to tour Work Alternatives. Plaintiff cancelled three consecutive appointments due to an alleged lack of transportation. When Ms. DeBaer attempted to contact the plaintiff, he was not at home although he indicated he had no transportation and his mother thought that he was at work hardening. As plaintiff alleged problems with transportation, defendants again offered transportation by taxi service or van service. Plaintiff refused these services stating that he could borrow a car; however, plaintiff continued to use lack of transportation as an excuse for missing appointments. During plaintiff's program with Work Alternatives, he attended only 7 out of 34 appointments from January 13, 1995 through March 2, 1995. This program was within the physical demand level approved by plaintiff's treating physician Dr. Rich, and plaintiff was never given a doctor's excuse for his failure to attend these programs nor did he seek medical treatment during this period. When plaintiff did attend these programs, he complained of intense pain but showed no objective signs of pain and reported the ability to do daily activities, but alleged that he was unable to do the tasks at Work Alternatives despite being able to sit, stand or move at will.
8. When plaintiff's vocational rehabilitation was moved to Harnett Production Enterprises on April 20, 1995, because the facility was closer to his home and plaintiff had made numerous complaints involving the travel previously required to Work Alternatives, the plaintiff attended only 11 out of 49 appointments at Harnett Production Enterprises even though defendants provided transportation. Again at Harnett Production, plaintiff never sought medical treatment for his complaints of back pain. When plaintiff did attend, he would take frequent breaks and would leave early. Plaintiff complained of pain, but when on personal time was able to sit without standing or shifting for 50 minutes.
9. After plaintiff's continued lack of attendance and participation and complaints of alleged back pain, it was recommended by vocational rehabilitation and approved by Dr. Rich that plaintiff attend the Spine Center. On June 20, 1995, plaintiff refused to attend the three-week program. Defendants then gave plaintiff the option to attend on weekends; plaintiff continued to refuse.
10. On July 5, 1995, an Administrative Decision and Order was entered by Special Deputy Commissioner Amy Pfeiffer approving the defendants' Form 24 Application to Terminate Compensation pursuant to N.C. GEN. STAT. § 97-18.1, allowing defendants to terminate payment of compensation to plaintiff effective May 5, 1995. This matter was the subject of two prior Applications to Terminate Compensation, both of which were disapproved. On May 10, 1994, plaintiff was ordered to comply with defendants' vocational rehabilitation efforts in an Order entered by the Industrial Commission's Chief Claims Examiner. The Industrial Commission filed an Administrative Decision and Order on November 30, 1994 disapproving the Form 24 Application to Terminate Compensation, but ordering plaintiff to comply with vocational rehabilitation efforts. That order also specifically provided that plaintiff's non-compliance with that decision and future vocational rehabilitation efforts would result in termination of plaintiff's benefits. Special Deputy Commissioner Tracey Weaver, at that time, also indicated that plaintiff should comply with vocational rehabilitation efforts in good faith and that the issue of transportation should no longer be used as a reason to cancel appointments as the defendants had provided transportation.
11. Defendants paid temporary total disability compensation until July 7, 1995 though benefits were ordered terminated May 5, 1995.
12. As of November 11, 1993, plaintiff was capable of earning wages in sedentary work with no bending and twisting and with sitting and standing and if sitting, being provided a couple of minutes every half hour to stand.
13. After the May 10, 1994 Order of the Industrial Commission ordering compliance and continuing until May 5, 1995 when defendants were allowed to terminate compensation, plaintiff was consistently non-compliant with vocational efforts.
14. Plaintiff reached the end of his healing period on November 11, 1993. However, plaintiff did not reached the end of his vocational rehabilitation period until May 5, 1995, when it became clear that plaintiff refused to comply with vocational rehabilitation efforts.
15. Plaintiff retains a 25% permanent impairment of the back. Defendants paid plaintiff 45 weeks of compensation for this 25% permanent impairment from payments made pursuant to Forms 26 filed in this matter. Defendants overpaid temporary total disability compensation between May 5, 1995 and July 7, 1995 due to do the fact that defendants continued to pay temporary total disability payments up to July 7, 1995 even though defendants were entitled to terminate workers' compensation benefits as of May 5, 1995 pursuant to Administrative Order.
16. Defendants are entitled to an offset for payments made to plaintiff between May 5, 1995 and July 7, 1995.
***********
Based upon the findings of fact, The Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff failed to cooperate with vocational rehabilitation efforts even following Orders by the Industrial Commission to do so on May 10, 1994 and November 30, 1994.
2. As a result of plaintiff's continued failure to comply with vocational rehabilitation efforts, defendants are entitled to terminate plaintiff's workers' compensation effective May 5, 1995. N.C. GEN. STAT. § 97-25.
3. Defendants continued to pay compensation to plaintiff at the rate of $172.52 per week from May 5, 1995 until July 7, 1995. Defendants are entitled to an offset for these payments. N.C. GEN. STAT. § 97-42.
4. Plaintiff retains a 25% permanent partial impairment to his back as a direct and proximate consequence of his compensable injury by accident and is entitled to payment of compensation in the amount of $172.52 for a period of 75 weeks therefore. Plaintiff has previously received 45 weeks of compensation for his permanent partial impairment. Furthermore, plaintiff has received compensation at the rate of $172.52 per week from May 5, 1995 until July 7, 1995, which was not due and payable. Defendants are therefore entitled to an offset for the 45 weeks of compensation for permanent partial impairment which plaintiff has previously received and an offset for payments made between May 5, 1995 and July 7, 1995.
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay to plaintiff for his 25% permanent partial impairment of the back compensation at the rate of $172.52 per week for a period of 75 weeks subject to an offset to defendants for the 45 weeks of compensation previously paid for plaintiff's permanent partial impairment and for the compensation payments made by defendants between May 5, 1995 and July 7, 1995 when they were not due and payable.
2. Each side shall bear its own costs.
 S/_____________ WANDA BLANCHE TAYLOR DEPUTY COMMISSIONER
CONCURRING:
S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
S/_____________ PHILIP A. HOLMES DEPUTY COMMISSIONER
WBT/spc